# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

JAMES RICHARD RUTH,                     \*

    **PLAINTIFF,**                     \*        **CIVIL ACTION**

    **v.**                     \*

                                              **FILE NO:  3:12-cv-40-WHA**
                                     \*

NEAL C. TENEN,                                       **JURY TRIAL DEMANDED**
A LAW CORPORATION,                     \*

    **DEFENDANT**                     \*

## PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR JUDGEMENT ON THE PLEADINGS

John W. Roper
*(Pro Hac Vice)*
Attorney for James Richard Ruth


John W. Roper
The Roper Law Firm
5353 Veterans Parkway, Suite A
Columbus, Georgia 31904
Telephone: (706) 596-5353
Facsimile:  (706) 596-5383
johnroper@roperlaw.com
Georgia Bar No:  614159

# **TABLE OF CONTENTS**

TABLE OF
CONTENTS………………………………………………….…………….....i

TABLE OF
AUTHORITIES……………………………………….…………..........ii

I.    THE COMPLAINT'S ALLEGATIONS……………………….……….…....2

II.   FED. R. CIV. P.12(c) STANDARD………………………………………..5

III.  ARGUMENT/CITATION OF AUTHORITY………………………...…6

  A. PLAINTIFF IS A CONSUMER…………………………..…………..............7

  B. PLAINTIFF OWED A CONSUMER DEBT………………….…..……...…7

  C. THE ALABABA DECEPTIVE TRADE PRACTICES ACT APPLYS....11

III. CONCLUSION ……………………………………….………………………13

CERTIFICATE OF SERVICE …………………………………………….……..16

# TABLE OF AUTHORITIES

## Cases

Ashcroft v. Iqbal
        566 U.S. 662 (U.S. May 18, 2009)……………………………….…….7

 Bass v Stopler, Koritzinsky, Brewster and Neider
        111 F.3d 1322, 1332 n.4 (7th Cir. 1997)……………………………….....10

Bell Atlantic Corp v. Twombly
        550 U.S. 544  (2007)…………………………………………………………7

Bell v. Providence Cmty. Corr., Inc.
        2011 U.S. Dist. LEXIS 6153(M.D. Tenn. June 7, 2011)……………..….10

Brown v. Budget Rent-A-Car Sys., Inc.
        119 F.3d 922, 923 (11th Cir. 1997)…………………………….…………9

Federal Trade Comm'n v Check Investors, Inc.
        502 F.3d 159 (3rd Cir. 2007, Cert, denied)………..……………..…………9

Gilmore v. Account Management, Inc.
        357 Fed. Appx. 218; 2009 U.S. App. LEXIS 27601 (11th Cir. 2009
unpublished)………………………………………………………………….…11

Hawthorne v. Mac Adjustment, Inc.
        140 F.3d 1367, 1370 (11th Cir. 1998)…………………………….……….6

In re Westberry
        215 F3d 589,593 n.4 (6th Cir. 2002) (citation omitted)…………………..10

Oppenheim v. I.C. System, Inc.
        627 F.3d 833, 836 (11th Cir. 2010)……………………………………..…14

United States v. $41,580.00 in U.S. Currency
        253 Fed. Appx. 880,882 (11th Cir. 2007)…………………………..………6

**Statutes:**

Ala. Code § 18-9-5 (27)……………………………………………………..…...…12

15 U.S.C. § 45(a)(1)…………………………………………………….……………12

15 U.S.C. § 1692a(3)…………………………………………………………….2,7

15 U.S.C. § 1692a(5)………………………………………………………..2,7,10,13

15 U.S.C. § 1692a(6)……………………………………………………………...2

15 U.S.C § 1692g…………………………………………………………...…1,11

15 U.S.C § 1692g(a)(4)………………………………………………………...2

15 U.S.C § 1692g(a)(5)……………………………………………………….2

O.C.G.A. §§ 10-1-391(b)...………………………………………………………12

O.C.G.A. §§ 10-1-393………………………………………………………....11

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| JAMES RICHARD RUTH, **PLAINTIFF,** | * | **CIVIL ACTION** |
| | * | |
| **v.** | | |
| | * | **FILE NO: 3:12-cv-40-WHA** |
| NEAL C. TENEN, | * | **JURY TRIAL DEMANDED** |
| A LAW CORPORATION, **DEFENDANT** | * | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### MOTION FOR JUDGMENT ON THE PLEADINGS

Comes now Plaintiff, filing this, his response to Defendant's Motion to Dismiss Plaintiff's claim pursuant to FRCP 12(c) and in support thereof respectfully shows as follows:

### CAUSE OF ACTION

Plaintiff brought the instant action seeking general and statutory damages arising out of a dunning letter received from Defendant, a third party debt collector, seeking to recover a purported balance due from the purchase of a television set from Best Buy, Inc., the original creditor. Plaintiff seeks relief pursuant to 15 USC 1692g, the Fair Debt Collection Practices Act and The Alabama Fair Trade Practices Act, Alabama Code § 8-19-1 et, seq.

1

## COMPLAINT THAT IS SUBJECT MATTER OF THIS MOTION

- In Personam Jurisdiction and venue are unchallenged.

- Plaintiff identifies the Defendant as a "Debt Collector" as defined by 15 U.S.C. § 1692a(6). [Comp ¶ 2].

- Plaintiff identifies himself as a "Consumer" within the ambit of 15 U.S.C. § 1692a(3) who allegedly owes a "Debt" defined by 15 U.S.C. § 1692a(5). [Comp ¶ 1].

- Plaintiff alleged Defendant sent Plaintiff a dunning letter [Comp ¶ 13 and Exhibit "A"].

- Plaintiff alleged Exhibit "A" was Defendant's initial communication with Plaintiff in connection with the collection of the purported debt. [Comp ¶ 14].

- Plaintiff stated, with concomitant specificity, the mandatory disclosure language of the statute, 15 U.S.C. §§ 1692g (a)(5) offended by Defendant, together with the excluded language [Comp ¶ 15].

- Plaintiff stated, with concomitant specificity, the mandatory disclosure language of the statute, 15 U.S.C. §§ 1692g (a)(4) offended by Defendant, together with the excluded language [Comp ¶ 17].

- Plaintiff attached the letter containing the violative non-disclosures to his complaint. [Exhibit "A"].

2

Plaintiff has therefore properly pleaded a prima facie case for violation of the federal Fair Debt Collection Practices Act in his Complaint. There can be no more plausible statement of facts than those establishing a prima facie case.

Best Buy, Inc. has long had a policy of extending domestic partner benefits in the same manner as would be extended to same sex couples, and continues to extend insurance and "wealth" benefits to domestic partners. [EXHIBIT "B" Front page of Best Buy, Inc.'s recruiting website], [Pl. AFF. ¶ 4] Plaintiff had used his employee discount for purchases for his family since the time of his employment and the transaction giving rise, ultimately, to this litigation was no different than made available for Plaintiff or other same sex couples prior to Plaintiff's purchase of the television in September, 2010. [Pl. AFF. ¶ 7]. In October, 2010, Best Buy, Inc. published a new employee handbook declaring the employee discounts were available for use by the employee and their spouse. [EXHIBIT "C"] [Pl. AFF. ¶ 8].

- There is no argument that Plaintiff used his employee discount to purchase a television set from his former employer.
- There is no argument that the purchase was for himself and his life partner. There will be no argument advanced that Plaintiff

3

and his partner have maintained a lengthy domestic partnership and continue to do so as a family unit.

- There is no question that had Plaintiff not been entitled to an employee discount then he would have been responsible for the full price of the appliance.

- There is no argument that Plaintiff was entitled to use his discount for the purchase of the television for himself, whether he had a domestic partner or not.

- There is no question that Plaintiff was present for the sales transaction, as was his domestic partner, as were a number of employees in the store who were aware of the relationship and had never had cause to challenge purchases of the nature of the transaction giving rise to the collection of the subsequent debt created when Best Buy, Inc. unilaterally determined that Plaintiff was in violation of the policy not published until after Plaintiff's purchase and discharged Plaintiff for violation of the employee discount policy.

Plaintiff then, on December 28, 2010 was told that he had not paid the correct price for the television and was asked to sign, and subsequently signed a document agreeing to pay Best Buy, Inc. the difference in the discounted purchase price and the full retail value of the television. [Pl. AFF.

4

¶ 10] Best Buy, Inc. labeled the document "Promise of Restitution", there being no apparent consideration supporting such a promise in the document itself but it being evidence of a continuing obligation arising out of the original purchase transaction. [EXHIBIT "D"].

Then, on January 19, 2011, Best Buy, Inc. attempted to get Plaintiff to sign an instrument stating that he acknowledged that his use of his discount for the television was improper. Plaintiff wrote the true reason for the use of the discount on the form and refused to sign it. [EXHIBIT "E"]. [Pl. AFF. ¶ 10].

Best Buy, Inc. then referred the amount asserted to be due it to Defendant, a third party debt collector, who commenced collection activity calculated to collect an amount asserted to be owed to Best Buy, Inc. [EXHIBIT "A"]. It is the defective and illegal character of Exhibit A as a communication in connection with the collection of a debt.

## ARGUMENT IN OPPOSITION AND CITATION OF AUTHORITY
## STANDARD

"After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P.12(c). [*2] "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance

of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998).

In reviewing a motion for judgment on the pleadings, the district court must accept all well-pleaded factual allegations in the nonmoving party's pleadings as true, and all reasonable inferences from those pleaded factual allegations are viewed in a light most favorable to the non-moving party. *See United States v. $41,580.00 in U.S. Currency*, 253 Fed. Appx. 880, 882 (11th Cir. 2007); *Hawthorne*, 140 F.3d at 1370.

## ARGUMENT AND CITATION OF AUTHORITY

Material fact disputes abound. Plaintiff was told by Defendant that he owed additional money on the purchase of a television set from Defendant and Defendant provided Plaintiff with a document evidencing Plaintiff's agreement to pay the money at some future time. Defendant claims, in essence, that designating a duck a cow makes it one by styling the evidence of Plaintiff's obligation a "Restitution" agreement. If Defendant wanted restitution, it would have exacted an agreement to return the television set to Defendant. Defendant bases its motion on the supposition that the subject debt giving rise to the violation alleged by Plaintiff amounted to theft or was productive of fraud, and was therefore not a "debt" within the scope of 15 U.S.C. §§ 1692a (3) . There is nothing in the pleadings and no evidence of record to support Defendant's claim. Defendant says Plaintiff 's transaction

6

with Defendant was  not a consumer transaction but the pleaded facts

establish that it was.

## DEFENDANT'S RATIONALE FOR
## JUDGMENT IS FATALLY FLAWED

Defendant posits Plaintiff Roper (sic) cannot prove the elements of a

FDCPA claim: Plaintiff need only establish plausibility at this stage to avoid

dismissal. *Ashcroft v. Iqbal,* 2009 U.S. Lexis 3472 at *28 (U.S. May 18,

2009).  "[A] complaint must contain sufficient factual matter," and must

meet the presentation of plausibility mandated by *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544 (2007), and *Iqbal*, 2009 U.S. LEXIS 3472 at *29. In

support of Defendant's diversion from the basis of the complaint, Defendant

argues:

1. **Defendant--Plaintiff is not a consumer within the ambit of 15
   USC § 1692a (3)** which says, "The term "consumer" means any
   natural person obligated or allegedly obligated to pay any debt."

Defendant cannot plausibly argue that Plaintiff is not a natural person

who is allegedly obligated to pay an amount certain, so the entire position of

Defendant rests on whether the amount Plaintiff is alleged to owe is a "debt"

within the contemplation of the law.

2. **Defendant--The amount sought to be collected is not a
   consumer debt within the ambit of 15 USC § 1692a**, which defines
   "debt" as
   *(5) The term "debt" means any obligation or alleged obligation of
   a consumer to pay money arising out of a transaction in which the
   money, property, insurance, or services which are the subject of*

7

> the transaction are primarily for personal, family, or household
> purposes, whether or not such obligation has been reduced to
> judgment.

That Exhibit A speaks to an "obligation or alleged obligation of a

consumer to pay money" is obvious on its face.

"Arising out of a transaction in which the money, property, insurance, or
services which are the subject of the transaction are primarily for personal,
family, or household purposes".

There is no argument Plaintiff purchased a television set from Best

Buy, Inc. for his personal use and that of his domestic partner. Defendant's

reliance on *Hawthorne v. Mac Adjustment, 140 F.3d 1367* in support of its

argument that the transaction involved herein is not a consumer transaction

and therefore not a debt is misplaced. Hawthorne sets forth the very

proposition that refutes Defendant's argument.

*Hawthorne* held, inter alia,

> *"the debts must originate in a consumer transaction, meaning
> that the parties have negotiated or contracted for consumer-
> related goods or services. Id."* (holding that a monetary
> obligation arising from a tort suit is not a debt under the
> FDCPA).

The transaction between Plaintiff and Best Buy, Inc. involved the

purchase of a consumer good and did not sound in tort. *Hawthorne* held a

"transaction" under the FDCPA must involve some kind of business dealing

or other consensual obligation. Clearly the purchase of a television from a

retailer is a business transaction. Defendant may argue that the dealing did

8

not involve a consensual obligation, an argument that would fail because the term "or" is disjunctive, but, in any event, it was Defendant who drafted the "agreement" Plaintiff signed to pay the balance of the purchase price.

Defendant argues that the obligation arises out of fraud or theft but there is no evidence to support this legal conclusion and it should be disregarded. Hawthorne further reminded the circuit that the Eleventh Circuit had previously held that a "debt" need not require the extension of credit, see *Brown v. Budget Rent-A-Car Sys., Inc.,* 119 F.3d 922, 924. The only evidence before the court is that Defendant and Plaintiff had a difference of opinion regarding the amount Plaintiff should have paid for a television set and Best Buy, Inc. required Plaintiff to sign an agreement to pay the balance at some future time, which actually is an extension of credit.

If Best Buy, Inc., made a fraud determination, it had a means of establishing the same by setting forth the elements of the tort in an appropriate forum, obtaining a judgment against Plaintiff, if it could, and going about the business of exercising its remedies. Moreover, there is no fraud exception in the FDCPA regarding obligations to pay money for goods received, *Federal Trade Comm'n v Check Investors, Inc.* 502 F. 3d 159 ('It is clear that people who write bad checks do so knowingly and willfully and that their conduct is fraudulent. It is just as clear that Congress enacted a definition of "consumer" that did not exclude such persons under the*

9

protections that would otherwise be afforded under the FDCPA.") *Accord Bass v Stolper, Koritzinsky, Brewster and Neider*, 111 F. 3d. 1322.

If Best Buy, Inc. had probable cause to believe Plaintiff committed a crime then it certainly could have caused Plaintiff to be arrested and charged. Plaintiff in that context, would have to have guilt proven beyond a reasonable doubt and the speculation of Defendant, as expressed in its motion, that this transaction was somehow related to fraud or criminal behavior are bare allegations and legal conclusions set forth without support.

Plaintiff, therefore, has established in his complaint that the obligation purported to be owed by him, to a sufficient degree to meet *Iqbal-Twombly* muster, is a debt arising out of a consumer transaction as contemplated by 15 USC § 1692a (5).

### 3. Defendant—The characterization of the amount owed as restitution transforms the amount alleged to be owed into something other than a debt.

As with *Hawthorne*, supra, Defendant's proposition that *Bell v. Providence Cmty. Corr., Inc., 2011 U.S. Dist. LEXIS 61583* excludes Plaintiff's obligation from the definition of debt is specious and inapplicable. "'[A]t a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value.'" *In re Westberry*, 215 F3d 589, 593 n.4 (6th Cir. 2002) (citation omitted).

"The requirement that Plaintiff pay fines, fees and other expenses as a consequence or her being placed on probation is not the "type of *pro tanto* exchange which the statutory definition envisions." Id.; Unlike *Bell*, and similar cases to which Defendant refers, Plaintiff's obligation to pay for a television did not arise out of any fines connected with probation, court ordered payments, tax levies or any other obligations thrust upon him.

### 4. Defendant—Ruth's allegations of the ADPTA are mere conclusions

Unfortunately for Defendant, that is an open question for the Court with regard to Alabama law but not with the law of the Eleventh Circuit. The Court may find it helpful view the Eleventh Circuit ruling in *Gilmore v Account Management, Inc* 357 Fed. Appx. 218; 2009 U.S. App. LEXIS 27601 [attached as Exhibit "F" pursuant to Fed.R.App.P.32.1]

"This question in this case is whether the defendant-appellee's conduct in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 et. seq. also violated Georgia's Fair Business Practices Act of 1975 (FBPA), O.C.G.A. §§ 10-1-393 et. seq. The District Court erred when it answered that question in the negative. We therefore vacate the district court's judgment and remand."

"The consumer credit industry is one of the largest financial sectors of the U.S. economy and heavily impacts the market place by affecting the

11

general public's ability to obtain goods and services. Misrepresenting consumers' financial indebtedness to others or falsely reporting consumers' credit histories has a potential adverse effect on the consumer marketplace and the economy in general. As such, collecting a debt incurred during a consumer transaction could harm the general consuming public if conducted via deceptive acts or practices and clearly falls within the parameters of the FBPA... *The FBPA is to be interpreted in accordance with the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). O.C.G.A. § 10-1-391(b). "For purpose of the exercise by the Commission of its functions and powers under the Federal Trade Commission Act [15 U.S.C. 41 et seq.], a violation of [the FDCPA] shall be deemed an unfair or deceptive act or practice in violation of that Ac*t." *id*. (Emphasis supplied).

The Alabama Code proscribes "Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."Ala. Code § 18-9-5 (27).

Ala. Code 8-19-6 provides: "Interpretation: It is the intent of the legislature that in construing Section 8-19-5, due consideration and great weight shall be given where applicable to interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended."

12

Thus, the Eleventh Circuit found that a violation of the FDCPA was, in effect, a per se violation of the Georgia Fair Business Practices Act. The Alabama legislature, similarly, has made its intent clear that consumers are to be protected from unfair or deceptive acts or practices. It logically and legally follows that the law of the Circuit has been decided respecting FDCPA violations where state consumer protection statutes require an interpretation that is congruous with the FTC Act. It would therefore appear that in these cases no more definite statement of claim is required, and that an FDCPA violation is a per se violation of the ADTPA.

## CONCLUSION

"The purposes of the FDCPA are remedial: To eliminate collection abuses; redress injuries not adequately protected by prior law; and encourage fair debt collection methods." 15 USC § 1692. In its deliberations, Congress made it abundantly clear that the term "debt" was not limited to "credit". Compare 15 USC § 1692a(5) with HR 1169, 94th Congress, 2nd Sess. § 802(e), February, 1976. Given the remedial purposes of the FDCPA and Congressional expansion of the definition of "debt" the narrow exclusionary interpretation of the term "debt" urged by Defendant would seem anomalous.

If the Court finds that the underlying subject matter of this action involves payment obligations of a (1) *consumer* arising out of a (2)

13

*transaction* in which the money, property, insurance, or services at issue are

(3) *primarily for personal, family, or household purposes.*" Oppenheim v.

I.C. System, Inc., 627 F.3d 833, 836 (11th Cir. 2010) then Defendant's

motion position collapses instanter. Defendant has gone outside the

pleadings to argue facts not in evidence or which are contrary to the

evidence with conclusory statements about how the debt was perceived by

Best Buy, Inc., attempting to argue thinly disguised 12(b)(6) Iqbal-Twombly

plausibility in the face of Defendant's own prima facie violative letter

attached to the complaint and then devoting a great deal of energy arguing

cases dealing with restitution for criminal fines and related matters which

were thrust upon persons by bodies with the legal authority to do so which

have no relationship to the kind of debt Plaintiff is alleged to have incurred..

Defendant undertook to collect a purported obligation of Plaintiff to a

retail store arising out of the purchase of a television set and sent a legally

flawed initial communication. Defendant has not denied the content or

character of its communication. Defendant's only claim, at this stage, is that

Plaintiff has not stated a claim and, by implication, that the court does not

have in rem jurisdiction because action does not involve a payment

obligation of a (1) *consumer* arising out of a (2) *transaction* in which the

money, property, insurance, or services at issue are (3) *primarily for*

*personal, family, or household purposes.*

14

Defendant raises facts it must prove in response to a Motion for

Summary judgment by Plaintiff at a later time, but argues nothing of

evidentiary value to support a Rule 12(C) Motion For Judgment on the

Pleadings and accordingly such motion should be denied.

Submitted this 21st day of March, 2012.


                                        /s/ John W. Roper
                                      John W. Roper
                                      (*Pro Hac Vice*)
                                      Attorney for Plaintiff

Prepared by:

John W. Roper
The Roper Law Group
5353 Veterans Parkway, Suite A
Columbus, Georgia 31904
(706) 596-5353
johnroper@roperlaw.com
Georgia Bar No:  614159

15

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES RICHARD RUTH, | * | |
| **PLAINTIFF,** | | **CIVIL ACTION** |
| | * | |
| **v.** | | |
| | * | **FILE NO: 3:12-cv-40-WHA** |
| NEAL C. TENEN, | * | **JURY TRIAL DEMANDED** |
| A LAW CORPORATION, | | |
| **DEFENDANT** | * | |

## AFFIDAVIT OF JAMES RICHARD RUTH

**State of Georgia:**
**County of Muscogee:**

Personally appeared before me the undersigned officer authorized to administer oaths, James Richard Ruth, who upon first being sworn herewith duly deposes and states as follows:

1.

That I am James Richard Ruth, that I am in excess of twenty-one years of age, that I am free of any mind-altering substance, and that I am totally capable of rendering fair and reasonable testimony to the matters set forth herein.

2.

That I understand that this Affidavit is taken in connection with my opposition to Defendant's Motion for Judgment on the Pleadings in the case I have pending in the United States District Court for the Middle District of Alabama, James Richard Ruth v. Neal C. Tenen, a Law Corporation CA. NO. 3:12-cv-40-WHA.

3.

That at the time of the consumer transaction giving rise to the subject matter of this litigation I was an employee of Best Buy, Inc.

4.

That Best Buy, Inc. has historically made available employee benefits for the use of employees and their families including the use employee discounts for merchandise purchases.

5.

That all such benefits were available to domestic life partners residing with the employee, as well.

6.

That over the years both I, my life partner Chris Cantrell formerly employed by Best Buy, Inc. and other same sex couples have availed themselves to the use of the employee discount for family use.

7.

That in September of 2010, my life partner and I purchased a television set from Best Buy, Inc. using my employee discount as we had always done.

8.

That in October, 2010 Best Buy, Inc. changed the discount availability to domestic partners to include only the "spouse."

9.

That on December 28, 2010, my employer told me that my purchase of the television set should have been at full retail because I was the person who handed the cash register clerk the means of payment, with cash handed to me by my domestic partner.

10.

That I agreed to pay the balance of the retail value of the television on January 15, 2011 and signed an agreement to that affect my employer then terminated me, stating that I had improperly used my employee discount which I refused to do because I had not done so.

11.

That being unemployed I was unable to keep my commitment to pay the debt agreed upon in December and Best Buy, Inc. turned me over to the Defendant bill collector from whom I received a dunning letter.

FURTHER DEPONENT SAYETH NOT.

**James Richard Ruth**

Sworn to and subscribed before me
this 21st day of March 2012.

**Notary Public, State of Georgia**
My commission expires: 2/3/14

# EXHIBIT A

## NEAL C. TENEN
*A Law Corporation*
P.O. BOX 56028
SHERMAN OAKS, CA 91413
Toll Free (800) 916-0911

* Member California Bar Only

January 14, 2011

RICHARD RUTH

PHENIX CITY, AL 36869-3455

RE: Case# 501162-37 (12/29/2010)
Restitution Agreement
Best Buy, Inc.

Dear Richard Ruth:

On 12/29/2010 you entered into an agreement with Best Buy, Inc., promising to pay restitution for losses in the amount of $1,038.14, at a rate of $165.00 per month.

This office has been retained by Best Buy, Inc. to assist them in administering the agreement and collecting the balance of the remaining payment(s). Our records show a current balance of $1,038.14.

Your payment of $165.00 is now due on 02/13/2011, which may include a down payment and/or any past due amounts. **In order to properly credit your account, please complete the information below and mail it with your payment to this office.** For your convenience, we have enclosed a self-addressed envelope.

Unless you notify us within thirty days after receipt of this letter that the validity of this debt, or any portion of it, is disputed we will assume that the debt is valid. If you do notify us of a dispute, we will obtain verification of the debt and mail it to you. This letter is an attempt to collect a debt, and information obtained will be used for that purpose. We are debt collection attorneys.

If you should have any questions in regard to this matter, you can call this office at (818) 933-5080 outside of California use (800) 916-0911, between the hours of 8:30 am - 5:00 pm, Pacific Standard Time.

Thank you very much for your anticipated cooperation in this matter.

Very truly yours,

Neal C. Tenen
Attorney at Law

*Se Habla Español*

---

✂ -------------------------------------------------CUT HERE FOR PAYMENT SLIP-------------------------------------

**BBI-501162-37 (Ruth)**

*Make cashier's check or money order payable to Best Buy, Inc.*

☐  My address correction is on the reverse side

*Mail to:*  Legal Payment Center
PO Box 56028
Sherman Oaks, CA 91413

Payment due: $165.00 Please enclose cashier's check or money order, or complete all the information below for a payment by credit card (billing will be "Legal Payment Center.")

| Amount | Cashier's Check/Money Order | Visa | MasterCard | Credit Card Number | Expires |
|---|---|---|---|---|---|
| $ | ☐ | ☐ | ☐ | - - - | / |

SIGNATURE: _____   Phone: ( ) -
1315 X   PN

# EXHIBIT B



About Best Buy   Culture   Diversity          Community R          

Career Center Home

## Benefits well beyond a paycheck.

Working at Best Buy definitely has its perks. What you get for working at Best Buy is based on a comprehensive Rewards strategy, which includes a combination of pay, benefits, work/life options and professional-development opportunities.

Our health and wealth benefits programs are available to employees and their spouses/same-gender domestic partners and dependents. For full-time employees, health benefits include medical, dental, vision, life and disability, along with health-care and dependent-care spending accounts. Wealth benefits include 401(k) accounts, the Employee Stock Purchase Plan and bonus/incentive programs for eligible roles.

But the benefits don't stop there. Don't forget the excellent employee discount, along with generous time-off programs, tuition assistance, adoption assistance and vendor accommodation programs.

 Search by Keyword           Search Jobs

 **About Best Buy**
We know every
company says they're
about people, but we
really mean it. Really!
› Learn more

**Culture**
It's exhilarating,
challenging and
rewarding. Most
of all, it's fun!
› Learn more

**Community**
We care about the
communities in which
we do business.
› Learn more

# EXHIBIT C

# Employee Discount Policy

The Best Buy Employee Discount is a benefit extended to our employees that enables you to purchase products and services at Best Buy retail stores at a discounted price. Make sure you know what's OK and not OK when it comes to the Employee Discount.

**Applies to**
All Best Buy employees are eligible after 30 days of continuous employment.

**Who can use it**
- You can use the employee discount after 30 days of continuous employment.
- You must be present for all employee discount purchases and make the purchase yourself. If you pay by check, debit card or credit card, make sure your name appears on the check, debit card or credit card.
- You may make purchases for your personal use or for "bona fide" gifts.
- The following family members are also eligible to receive the benefit of your employee discount for their personal use as long as you are present at the time of purchase and you make the purchase for them:
  - Your spouse
  - Your dependents under the age of 23

Please note that friends, siblings and relatives not listed above are not eligible to receive your employee discount or reimburse you for any item you purchased using your employee discount.

**Using the discount**
- While you can use your discount to make bona fide gift purchases, your spouse and dependent children are not eligible to do this. A "bona fide" gift is something you would normally give someone considering your own income and living standards. Also, the gift should be made without the expectation you will receive anything in return.
- *You may use your discount to purchase bona fide gifts for the direct use and benefit of charitable organizations.
- *You may purchase products at their average cost plus 5%, or the current selling price, whichever is less.
- You may purchase Geek Squad Black Tie Protection (GSBTP) and eligible Geek Squad services at 5% above cost.

  *(Tax Disclaimer: The GSBTP and Geek Squad services employee discount exceeds allowable discount limits set by the IRS. You'll be taxed as though you received additional income on the next pay period after you purchase the service (the difference between 20 percent off the service and 5 percent above cost is taxable. See _Tax Example._

- You may not use your employee discount to purchase items for use in a personal business.
- You cannot use your employee discount to make purchases on www.BestBuy.com. In addition, you cannot return products purchased on www.Bestbuy.com to Best Buy stores and repurchase them using the employee discount.
- Your employee discount extends to products purchased at Magnolia Home Theater locations located within Best Buy retail stores. However, the employee discount does not extend to products purchased at stand-alone Magnolia Audio Video locations.

---

Last updated October 18, 2010

The employee discount does not apply to the following products and services:

- o  Best Buy funded or sponsored discounts, rebates or special arrangements in addition to the employee discount.
- o  Configure-to-order products or related items ordered through the kiosk.
- o  Limited quantity, lead, ad and special promotional items during the promotion period. Store management discretion will determine the availability of such items during promotional periods.
- o  Software solution products or related items sold as a value package.
- o  Services such as deliveries, haul-aways, hookups, etc. The fees for these services are generally the price Best Buy pays, so a discount is not applied.

**Procedures to follow when using your discount**

- •  You can use your employee discount at any Best Buy retail store. If you require assistance, please be sure to tell the sales associate that you are a Best Buy employee. Remember, our non-employee customers always come first.
- •  You are required to provide your employee number and a photo ID to the cashier when making an employee discount purchase. If your employee number begins with a zero, leave that number out.
- •  You are required to follow the same processes at the checkout lanes and exit points as our customers and may be asked to show a receipt when you leave the store.
- •  If you are not on Company business or scheduled to work, you cannot enter designated non-customer areas (i.e., Customer Service, break rooms, storage or stockrooms) while shopping.
- •  To check the price of a product prior to making a purchase, you should write down the sku number(s) found on the Best Buy tag and present that information at any accessible cash register.
- •  Remember to identify yourself as a Best Buy employee and to let all non-employee customers obtain service before you. A receipt will then be printed for you listing the employee price. Please note that all Best Buy cost information is confidential. Do not disclose your employee purchase price to anyone.

**Important things to know**

**Holiday enhancement**
The 30-day waiting period for the Employee Discount Policy is waived for employee purchases beginning November 20 and ending on December 31 of each year. The 30-day waiting period goes back into effect January 1.

**Vendor funded or sponsored discounts, rebates or special arrangements**
You are eligible to participate in these special programs the same as any other customer.

**Financing offers**
You can use your employee discount with everyday financing options of:
- •  90 days no interest with payments on all purchases;
- •  6 months no interest with payments on all purchases $299 and above; and
- •  48 months with fixed interest on all purchases $299 and above.

**However, you must qualify for the financing program.**
- •  You cannot use your discount with promotional product financing offers.
- •  You cannot use promotional product financing to purchase gift cards.

---

## Services Department Charges

### Product Services
Best Buy supplied parts and accessories are available to you at average cost plus 5%. Labor will be invoiced at 5% above cost for Product Repair Issues.

If the repair is not completed by Best Buy and services are provided by a third party resource, you will also be charged the same price charged to Best Buy by the third party. No discount applies.

### Mobile Installation Services
Labor will be invoiced at 5% above cost for Mobile Electronics Installation. You will be charged the standard materials charge. Installation labor and materials charges must be paid for in the installation center. No discount will apply if labor and materials are paid for in the checkout lanes. Your installations should be scheduled during non-peak hours, Monday through Friday.

Installation Supervisors may determine if business dictates installation availability during weekends and primetime hours.

### Cellular Phones
You may purchase cellular phones at the current price with the accompanying airtime service and fees. If you do not want the one-year airtime service contract promoted with the phone, you must purchase the cellular phone at the average cost of the phone plus 5%. Clearance, closeout and discontinued items: You may purchase these items at the average cost plus 5%. A lesser price will only be allowed with store manager approval.

### Customer Fulfillment Purchases
Products available for purchase through Customer Fulfillment for Out of Stock and Expanded Assortment needs may be purchased at the average cost plus 5%, or the current selling price, whichever is less.

### Before you make a purchase
We are pleased to extend this discount to you. Remember, however, the employee discount is a privilege and benefit. Any misuse of this policy will not be tolerated and all questionable purchase transactions will be investigated. Violation of the employee discount policy may result in disciplinary action up to and including termination of employment. Please review the Frequently Asked Questions below before making a discount purchase.

## Frequently Asked Questions

**Am I required to be present for and purchase all items on behalf of eligible family members?**
- Yes. It is a requirement of the Employee Discount Policy that you be present for and make all purchases on behalf of your spouse or dependent children.

**Can my employee discount be used to make a gift purchase on behalf of a group?**
- You may use your discount to purchase bona fide gifts for the direct use and benefit of charitable organizations.

---

Last updated October 18, 2010

**My co-worker often buys products from Best Buy's Retail stores with his employee discount and later sells them to his friends for the same discounted price. Is this considered prohibited behavior and a violation of the Employee Discount Policy?**

- Yes. Misuse of the employee discount will not be tolerated. The employee discount is a benefit for the employee, their spouse, and dependents under the age of 23. In this example, the friends received a discounted price which is prohibited under the Employee Discount Policy. In addition, the co-worker employee was not making "bona fide" gift purchases, which is in violation of the policy.

**I own my own business outside of Best Buy and I'm in need of a computer. Can I use my employee discount to make the purchase?**

- No. Items purchased at Best Buy with the employee discount may not be used for your personal business.

**Does the 5 % above cost for Greek Squad services exclude anything?**

- Yes. It exclude the following:
  - BestBuy.com purchases
  - Express Lane purchases
  - Ask an Agent
  - GSBTP monthly billing plans
  - S2 software
  - In-home delivery
  - Repairs completed at service centers; employees will pay:
    - 5% above cost
    - 20% off labor

**Employee Auction**

Best Buy employees can buy overstock, end-of-life and tested open-box products, usually at a significant discount off Best Buy cost. The Employee Auction Web site offers regular auctions of this inventory and is always open with BUY NOW prices during non-auction periods. You can register at **www.bestbuy.dtdeals.com** with your e-mail address, or with a personal e-mail address, your employee number and store or warehouse location number. You are free to buy not only for yourself but for friends and family as the rules for using your employee discount do NOT apply to the employee auction.

**For more information**

If you have further questions regarding this policy, please contact your manager or the eGO HR Support Center at 1-866-MY-BBY-HR (1-866-692-2947).

---

# EXHIBIT D

# Promise of Restitution



Date: _12-28-10_

TO WHOM IT MAY CONCERN:

I, ___Richard Ruth___, hereby agree to make restitution in
          (Name)

the amount of $ ___1,038.19___ by ___1-15-2011___ to Best Buy Co., Inc.
        (Specify)         (Date)

＊_____
            (Signature)

＊Richard Ruth_____
            (Name Printed)

_____
       (Witness)

_____
       (Witness)

Non-reorderable. Print from TagZone. 703789



EXHIBIT

# EXHIBIT E

**BEST BUY** ™

(To be completed by an HR Support Center Caseworker & the Manager and presented to the employee at the separation meeting. Signed form must be faxed to 952-430-4259.)

Employee Name: Richard Ruth

Job Title: SALES OPERATOR

Hire Date: 10/17/2009

Manager Name: Leroy Tunley Iii

Phone #: 706- 322-3541

Employee #: 21358

Location #/Corp Dept:   000843   Location State:AL

Termination Date: *1/19/11*

Manager Title: MGR, GENERAL

Service Request #: 1-84120200

## Involuntary Termination:

Richard, on September 3, 2010 you utilized your employee discount for an ineligible person. This conduct is a violation of Best Buy's Employee Discount policy and consequently, grounds for termination. Your employment with Best Buy is terminated effective immediately.

☒ Employee named above admitted verbally or in writing to utilizing the discount for an ineligible person.

Employee Comments: *The purchase was indeed for personal use and the money used was valid.*

## Involuntary Separation Reasons (choose one):

☐ Absenteeism/tardiness
☐ Inappropriate Conduct
☐ LOA—Exhausted Medical

☐ Misappropriation of Company Property
☐ No Work Authorization
☐ Staff Reduction

☐ Unacceptable Performance
☒ Violation of Rule or Policy
☐ O/S Assignment Complete

By signing I acknowledge that I have read and understand the contents of this document, which has been reviewed with me.

Employee Signature: *(note if refused or no show)* *Refused to sign*   Date: *1-19-11*

Manager Signature: _____   Date: *1-19-11*

Witness Name: *(please print)* *Carole Brown*   Title: *CSM*

Witness Signature: _____   Date: *1/19/10*

For Office use only: ( ) P      ( ) NP

*Best Buy Confidential and Proprietary*

# EXHIBIT F

*357 Fed. Appx. 218, \*; 2009 U.S. App. LEXIS 27601, \*\**

GLENN GILMORE, Plaintiff-Appellant, versus ACCOUNT MANAGEMENT, INC., a Tennessee corporation, Defendant-Appellee.

No. 09-14983 Non-Argument Calendar

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

357 Fed. Appx. 218; 2009 U.S. App. LEXIS 27601

December 16, 2009, Decided
December 16, 2009, Filed

**NOTICE:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:**  [\*\*1]
Appeal from the United States District Court for the Northern District of Georgia. D. C. Docket No. 08-01388-CV-JOF-1.
Gilmore v. Account Mgmt., 2009 U.S. Dist. LEXIS 79321 (N.D. Ga., Aug. 31, 2009)

**DISPOSITION:** AFFIRMED in part, VACATED in part, and REMANDED.

**CASE SUMMARY**
**PROCEDURAL POSTURE:** Plaintiff consumer appealed a judgment of the United States District Court for the Northern District of Georgia, which granted his motion for default judgment as to his claim that defendant debt collector violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.S. §§ 1692-92p, but denied his motion as to his claim that the collector violated Georgia's Fair Business Practices Act of 1975 (FBPA), O.C.G.A. §§ 10-1-390-407.

**OVERVIEW:** The district court held that the consumer's state-law FBPA claims failed because he presented no evidence that the collector's conduct had the potential to harm the general public. On appeal, the court disagreed. The consumer's alleged debt was incurred during a consumer transaction for lawn care services, and the consumer pleaded facts in his complaint sufficient to establish that the collector was part of the consumer credit and debt collection industry. On those facts, the district court's ruling that the collector's conduct could not have harmed the general public was in error. The court also held that the collector necessarily violated Georgia's FBPA when it violated the FDCPA. The FBPA was to be interpreted in accordance with the Federal Trade Commission Act, 15 U.S.C.S. § 45(a)(1), pursuant to O.C.G.A. § 10-1-391(b). For purpose of the exercise by the Commission of its functions and powers under the Federal Trade Commission Act, a violation of the FDCPA should be deemed an unfair or deceptive act or practice in violation of that Act pursuant to 15 U.S.C.S. § 1692l(a).

**OUTCOME:** The court affirmed the district court's judgment as to the consumer's FDCPA claim, vacated its judgment as to his FBPA claim, and remanded for further proceedings.

**CORE TERMS:** consumer, general public, deceptive act, consumer credit, simple interest, unfair, repair, body shop, installment loans, misrepresenting, marketplace, collection, reporting, assigned, repaired, vacate, buyer, default judgment

**LEXISNEXIS® HEADNOTES**                                                                                                    ⌐Hide

---

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices > State Regulation 🗎

Torts > Business Torts > Unfair Business Practices > General Overview 🗎

*HN1* If the public consumer interest would be served, one instance of an unfair or deceptive act
⬥   or practice is a sufficient basis for a claim under the Georgia's Fair Business Practices Act
of 1975 (FBPA). Although the FBPA does not encompass suits based upon allegedly
deceptive or unfair acts or practices which occur in an essentially private transaction,
Georgia courts have defined these essentially private transactions narrowly. For example,
a mechanic repairing an single vehicle engages in a purely private transaction, but a car
repair hobbyist who occasionally sells a refurbished vehicle to an individual buyer does
not.  More Like This Headnote

---

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices > State Regulation 🗎

Banking Law > Consumer Protection > Fair Debt Collection > General Overview 🗎

Torts > Business Torts > Unfair Business Practices > General Overview 🗎

*HN2* Misrepresenting consumers' financial indebtedness to others or falsely reporting
⬥   consumers' credit histories has a potential adverse effect on the consumer marketplace and
the economy in general. As such, collecting a debt incurred during a consumer transaction
could harm the general consuming public if conducted via deceptive acts or practices and
clearly falls within the parameters of Georgia's Fair Business Practices Act of 1975.  More
Like This Headnote

---

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices > State Regulation 🗎

Banking Law > Consumer Protection > Fair Debt Collection > General Overview 🗎

Banking Law > Federal Acts > Federal Trade Commission Act > Coverage & Enforcement 🗎

Torts > Business Torts > Unfair Business Practices > General Overview 🗏

**HN3** Georgia's Fair Business Practices Act of 1975 (FBPA) is to be interpreted in accordance
⚓ with the Federal Trade Commission Act, 15 U.S.C.S. § 45(a)(1). O.C.G.A. § 10-1-391(b).
For purpose of the exercise by the Commission of its functions and powers under the
Federal Trade Commission Act, 15 U.S.C.S. § 41 et seq., a violation of the Fair Debt
Collection Practices Act shall be deemed an unfair or deceptive act or practice in violation
of that Act. 15 U.S.C.S. § 1692l(a).  More Like This Headnote | *Shepardize:* Restrict By
Headnote

**COUNSEL:** For Glenn Gilmore, Appellant: James Marvin Feagle ▾, Skaar & Feagle, LLP,
DECATUR, GA; Kris Skaar ▾ �belt, Skaar & Feagle, LLP, MARIETTA, GA.

**JUDGES:** Before CARNES ▾, MARCUS ▾ and KRAVITCH ▾, Circuit Judges.

**OPINION**

 [*219] PER CURIAM:

This question in this case is whether the defendant-appellee's conduct in violation of the Fair
Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-92p, also violated Georgia's Fair
Business Practices Act of 1975 (FBPA), O.C.G.A. §§ 10-1-390-407. The district court erred
when it answered that question in the negative. We therefore vacate the district court's judgment
and remand.

The facts are straightforward: Glenn Gilmore sued and asserted claims under the FDCPA and the
FBPA against Account Management for its conduct during an attempt to collect an assigned debt
from Gilmore. ¹ Account Management filed no answer to the complaint, and a magistrate judge
recommended entering default judgment against the defendant on both of Gilmore's claims. The
district court adopted the magistrate judge's recommendation on the FDCPA claim, but  [**2] it
concluded that Gilmore's state-law FBPA claims failed because he had not presented any
evidence that Account Management's conduct had the potential to harm the general public. ²
Gilmore now appeals.

**FOOTNOTES**

1  Gilmore primarily alleged that Account Management had harassed him by failing to identify

itself properly, misrepresenting the amount and character of the debt (both to him and to credit

reporting agencies), and threatening him with unlawful litigation.

2  The district court awarded Gilmore damages, costs, and attorney's fees on the FDCPA claim

but did not reach the question of damages on his FBPA claim.

The district court's conclusion was contrary to well-settled Georgia law defining the scope of the FBPA: <sup>HN1</sup> ☞ "If the public consumer interest would be served, one instance of an unfair or deceptive act or practice is a sufficient basis for a claim under the FBPA." _Marrale v. Gwinnett Place Ford_, 271 Ga. App. 303, 609 S.E.2d 659, 665 (Ga. Ct. App. 2005). Although the FBPA "does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private  [*220]  transaction," _Zeeman v. Black_, 156 Ga. App. 82, 273 S.E.2d 910, 914 (Ga. Ct. App. 1980), Georgia courts have defined these essentially private  [**3] transactions narrowly. For example, a mechanic repairing an single vehicle engages in a purely private transaction, but a car repair hobbyist who occasionally sells a refurbished vehicle to an individual buyer does not. _Compare Burdakin v. Hub Motor Co._, 183 Ga. App. 90, 357 S.E.2d 839, 841 (Ga. Ct. App. 1987) ("The FBPA does not apply to the negligent repair of an individual vehicle when the damaged vehicle's owner brings it to a body shop and enters into a repair agreement and the body shop represents only that it has been repaired when it has not."), _with Campbell v. Beak_, 256 Ga. App. 493, 568 S.E.2d 801, 805 (Ga. Ct. App. 2002) (concluding that a defendant's actions were not "purely private" when he repaired and sold about three wrecked cars a year to individual buyers). ʾ

**FOOTNOTES**

₃ _See also  Borden v. Pope Jeep-Eagle, Inc._, 200 Ga. App. 176, 407 S.E.2d 128, 131 (Ga. Ct. App. 1991)  ("The trial court did not err in directing a verdict for defendant on the FBPA claim. There is no evidence that the defendant's actions in this transaction had the potential for harming the general public. Defendant did not advertise simple interest contracts to the general public nor was there evidence that it was defendant's practice to sell cars promising simple  [**4]  interest installment loans and later attempt to dishonor those contracts. Defendant entered into a simple interest installment loan with plaintiff at plaintiff's urging."); _Zeeman_, 273 S.E.2d at 916  ("A single oral misrepresentation made in the context of an isolated nondevelopmental sale of real property relating to unique facts concerning that property appears to be an essentially 'private' controversy with no impact whatsoever on the consumer marketplace.").

Moreover, _1st Nationwide Collection Agency, Inc. v. Werner_, 288 Ga. App. 457, 654 S.E.2d 428 (Ga. Ct. App. 2007), is directly on point. The appellant in that case had violated the FDCPA

during its efforts to collect an assigned debt from the appellee, an individual. With reasoning that controls the disposition of this case, the Georgia Court of Appeals affirmed the trial court's judgment against the appellant on the appellee's FBPA claim:

The consumer credit industry is one of the largest financial sectors of the U.S. economy and heavily impacts the market place by affecting the general public's ability to obtain goods and services. *HN2* ⸙Misrepresenting consumers' financial indebtedness to others or falsely reporting consumers' credit histories has [**5] a potential adverse effect on the consumer marketplace and the economy in general. As such, collecting a debt incurred during a consumer transaction could harm the general consuming public if conducted via deceptive acts or practices and clearly falls within the parameters of the FBPA.

*Id.* at 431 (quotation marks and citations omitted). Gilmore's alleged debt was incurred during a consumer transaction for the provision of lawn care services. *Cf. id.* ("[A] consumer transaction occurred when Spencer Recovery Centers provided Werner medical services . . . ."). And Gilmore pleaded facts in his complaint sufficient to establish that Account Management was part of the consumer credit and debt collection industry. On these facts, the district court's conclusion that Account Management's conduct could not possibly have harmed the general public was in error.

*Werner* also supports the conclusion that Account Management necessarily violated Georgia's FBPA when it violated the FDCPA. *HN3* ⸙The FBPA is to be interpreted in accordance with the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). O.C.G.A. § 10-1-391(b). "For purpose of the exercise by the Commission of its functions and powers under the Federal [**6] Trade Commission Act [15 U.S.C. 41 et seq.], [*221] a violation of [the FDCPA] shall be deemed an unfair or deceptive act or practice in violation of that Act." 15 U.S.C. § 1692l(a) (first brackets in original). In *Werner*, the court held that "interpreting and construing the FBPA consistently with interpretations of the Federal Trade Commission Act, the trial court correctly ruled that Nationwide's violation of the FDCPA also constituted a violation of the FBPA." 654 S.E.2d at 431.

The district court therefore erred in denying Gilmore's motion for default judgment on his FBPA claim. Accordingly, we affirm its judgment as to Gilmore's FDCPA claim, vacate its judgment as to his FBPA claim, and remand for further proceedings consistent with this opinion.

**AFFIRMED in part, VACATED in part, and REMANDED.**

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

JAMES RICHARD RUTH,     *
    **PLAINTIFF,**           **CIVIL ACTION**
                      *

    **v.**
                      *     **FILE NO:  3:12-cv-40-WHA**

NEAL C. TENEN,         *     **JURY TRIAL DEMANDED**
A LAW CORPORATION,
    **DEFENDANT**          *

## CERTIFICATE OF SERVICE

This is to certify that on March 21, 2012 I electronically filed this

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR**

**JUDGMENT ON THE PLEADINGS** with the Clerk of Court using the CM/ECF

system which will automatically send e-mail notification of such filing to the

following attorneys of record.  I also hereby certify that I have also mailed via U.S.

Postal Service, the foregoing document:

Wayne Morse, Jr.
morse@wskllc.com
Waldrep Stewart & Kendrick, LLC
2323 Second Avenue North
Birmingham, Alabama  35203

                /s/ John W. Roper
                John W. Roper
                *(Pro Hac Vice)*
                Attorney for James Richard Ruth

16